569 A.2d 971

Albert R. McCORMICK, Jr., and Brian J. McCormick and Stephen S. McCormick, a Minor by His Parent and Natural Guardian, Mary J. McCormick, Appellants,

v.

NORTHEASTERN BANK OF PENNSYLVANIA.

Superior Court of Pennsylvania.

Submitted May 20, 1987.

Filed Feb. 15, 1990.

8

John Molnar, Bangor, for appellants.

Charles P. Eyer, Stroudsburg, for appellee.

Before McEWEN, JOHNSON and HOFFMAN, JJ.

HOFFMAN, Judge:

This appeal is from an order dated September 22, 1986, dismissing appellants' motion for post-trial relief. The motion for relief was filed after the trial court dismissed appellant's wrongful garnishment action against appellee, Northeastern Bank of Pennsylvania (hereinafter "Northeastern"). Appellants contend that the trial court erred in dismissing their action because the court erroneously required them to show that Northeastern *knowingly* garnished their bank accounts in order for them to prove that Northeastern violated their right to procedural due process. For the following reasons we affirm.

The relevant facts are as follows: On August 15, 1974, Pulmac, Inc. (hereinafter "Pulmac"), by Walter E. Olenick, Sr., President, executed a judgment note in the amount of fifty-five thousand dollars ($55,000) to be payable to the order of appellants Albert R. McCormick, Jr., Brian J. McCormick and Stephen S. McCormick. The appellants were ages 20, 15 and 8, respectively, at the time of the

execution of the note. The consideration for the note was the sale of corporate shares that were partially owned by appellants' mother. No monetary payments passed between appellants and their mother for the judgment note.[1] Walter Olenick, Sr., is the designated trustee for appellants. On or about February 25, 1977, Northeastern Bank of Pennsylvania attempted to execute a judgment against appellants' parents by seeking to garnish $10,622.24 from Pulmac.[2] On or about June 3, 1977, Northeastern sought to garnish another $11,298.48 from Pulmac. Pursuant to the first garnishment, Pulmac made payments from *appellants'* funds to Northeastern that totalled $10,317.75 between November, 1977 and June, 1979. At the time the payments were made, Olenick, in addition to being appellants' trustee, was the legal representative of both Pulmac and appellants' parents.

On April 21, 1980, appellants filed the instant action in trespass against Northeastern, alleging wrongful garnishment of certain of their bank accounts to pay their parents' judgment debts. On May 30, 1984, the Court of Common Pleas of Monroe County issued an order stating that, by agreement of the parties, the case would be tried on the basis of stipulated facts, interrogatories and depositions. The stipulation of facts was filed on February 26, 1985. On February 12, 1986, after hearing argument in the case, and considering the stipulation of facts, interrogatories and depositions, the trial court entered an opinion and order dismissing appellants' action. In making its decision, the court reasoned that Northeastern could not be liable because the evidence failed to establish that Northeastern was aware that its actions had resulted in the garnishment of funds that were not held in its judgment debtor's name. Appellants timely filed a motion for post-trial relief on February 24, 1986, requesting that the trial court reconsider its decision. The trial court entered an order dismissing

1. The parties stipulated that no determination would be made regarding whether this arrangement was a fraudulent conveyance.
2. The judgment arose from a lawsuit based upon debts previously owed Northeastern by appellants' parents.

appellants' motion for post-trial relief on September 22, 1986. Appellants filed a notice of appeal from that order to Superior Court on October 17, 1986. Initially, we quashed the appeal because we found it to be "an appeal from the lower court's granting of a preliminary objection and dismissing complaint." We granted reconsideration *sua sponte* and quashed again because the appeal was untimely. Our Supreme Court granted appellants' petition for allowance of appeal, found that the appeal was timely,[3] and remanded the case to us for disposition on the merits.

Appellants' claim below was based upon their allegation that Northeastern wrongfully garnished their accounts because appellants were not properly notified prior to the garnishment. On appeal, they contend that the trial court erroneously required them to show that Northeastern had *knowingly* garnished their bank accounts, in order to prove that Northeastern's garnishment was wrongful. Appellants thus suggest that we should hold that a garnishor violates a party's right to due process, and therefore becomes liable for wrongful garnishment, regardless of whether he is aware that his attempt to execute a judgment has resulted in the seizure of funds from someone other than his judgment debtor. As a general matter, of course, due process requires that a party who is to be deprived of property in a legal action have notice of the action and the opportunity to air his views before that action takes place. *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Comm. v. Thompson,* 444 Pa. 312, 281 A.2d 856 (1971). Our research, however, reveals no cases, and appellants have cited none, that require a garnishor to give

---

3. Specifically, our Supreme Court noted that, as a general matter: "it is the order of the trial court disposing of a motion for post-trial relief that has been reduced to judgment which comprises the final order in the case from which an appeal must be filed within thirty days." The Court also noted that "[a]lthough ... the decision of the trial court dismissing appellants' motion for post-trial relief was not reduced to judgment by praecipe of either party as required by Pa.R.A.P. 301, in the interests of judicial economy, we shall 'regard as done that which should have been done.'" 522 Pa. 251, 254 n. 1, 561 A.2d 328, 330 n. 1 (1989) (citation omitted).

notice to a garnishee of whose existence he is unaware.[4] Indeed, the only authority cited by appellants in support of their claim that appellee had a duty to notify them of its garnishment of their funds is the plurality opinion in *Gulf Mortg. & Realty Inv. v. Alten*, 286 Pa.Super. 253, 428 A.2d 978 (1981). We agree with the trial court that *Gulf* is readily distinguishable.[5] In *Gulf* a creditor who had obtained a judgment sought to garnish accounts that were in the name of both the creditor and his wife. The wife challenged the garnishment by filing a petition to quash the writ because she had never been notified or had a hearing. The trial court dismissed the petition. On appeal, however, we held that the seizure without notice or hearing violated the wife's due process rights. In this case, the trial court distinguished *Gulf* on the ground that there was no evidence that Northeastern knew it was garnishing *appellants'* funds instead of those of the party against whom it had obtained judgment.[6] The trial court thus properly recognized that *Gulf* does not support the proposition that a judgment creditor is liable regardless of its knowledge that it is garnishing a person's funds.

**4.** We should note that the duty to notify that appellants ask us to impose does not have support in the Rules of Civil Procedure. Under the Rules governing garnishment activities, a garnishor needs only to notify the garnishee and garnishment defendants. *See* Pa.R.C.P. 3108, 3111. Because Northeastern sought the property of appellants' parents, appellants were not entitled to notice at all under the Rules.

**5.** The panel opinion in *Gulf* was authored by Judge Hester. Judges Spaeth and Cavanaugh concurred in the result.

**6.** The trial court also distinguished this case from *Gulf* because appellants here waited two years and five months from the beginning of their injury before bringing their suit, whereas appellant in *Gulf* brought her action promptly. Based upon this distinction mentioned by the trial court, appellants now suggest that the trial court dismissed their action in part because it was untimely. Appellants then argue that such a dismissal would clearly be improper because the issue of timeliness is an affirmative defense that appellees waived. Although the trial court distinguished this case from *Gulf* on those grounds, appellants overemphasize the role the trial court's determination regarding timeliness played in its decision. The court clearly based its decision on its determination that Northeastern had no duty to notify appellants of its garnishment of their funds because Northeastern was unaware that the funds held by Pulmac belonged to appellants. For reasons set out later in this opinion, we agree with that distinction.

The question whether a garnishor must have knowledge that the funds of a person other than its judgment debtor have been used to satisfy the garnishment in order to be liable for wrongful garnishment is one of first impression in Pennsylvania. Examination of the general principles and policies underlying tort liability convinces us that the trial court's decision not to impose liability absent such knowledge should be upheld. As noted by Professors Prosser and Keeton:

> The common thread woven into all torts is the idea of unreasonable interference with the interests of others.... The tort-feasor is usually held liable for acting with an intention that the law treats as unjustified, or acting in a way that departs from a reasonable standard of care....
>
> Society has a two-fold interest in such a case. First, society has an interest in having any single dispute between individuals resolved fairly and promptly. Second, society has an interest in the outcome because of the system of precedent on which the entire common law is based.... There is good reason, therefore, to make a conscious effort to direct the law along lines which will achieve a desirable social result, both for the present and for the future....
>
> The prophylactic factor of preventing future harm has been quite important in the field of torts. The courts are concerned not only with compensation of the victim, but with admonition of the wrongdoer. When the decisions of the courts become known, and defendants realize that they may be held liable, there is of course a strong incentive to prevent the occurrence of the harm. Not infrequently one reason for imposing liability is the deliberate purpose of providing that incentive.

W. Prosser, W. Keeton, D. Dobbs, R. Keeton, D. Owen, *Prosser and Keeton on The Law of Torts* 6–25 (W. Keeton 5th ed. 1984) [hereinafter *"Prosser and Keeton"*].

■ Here, a close examination of the record and stipulated facts reveals that the conduct of Northeastern is not

the sort of unreasonable conduct that could be discouraged by the imposition of tort liability. There is no evidence that the procedures employed by Northeastern in seeking to satisfy its judgment against appellants' parents were improper, or that Northeastern was aware or should have been aware that the funds it received were appellants' property. Specifically, the record reveals that, after obtaining its judgment against appellants' parents, Northeastern properly served Pulmac with interrogatories pursuant to Pa.R.C.P. 3144, in order to determine whether Pulmac possessed funds in the name of appellants' parents. Olenick's failure to respond to those interrogatories within twenty days after service resulted in Pulmac being garnished under Pa.R.C.P. 3146(a)(1), which is invoked by the garnishee's failure to respond to interrogatories. The Rule places the burden on the garnishee to prove that it does not possess any of the judgment debtor's assets. Olenick should have responded to the interrogatories and asserted that he was not in possession of any funds belonging to appellants' parents. His failure to do so resulted in Pulmac's being garnished as if it was in possession of funds belonging to appellants' parents, Northeastern's judgment debtors. The decision to satisfy that garnishment out of appellants' funds was Olenick's alone, and there is no evidence that Northeastern was aware that the funds were taken from accounts other than those controlled by appellants' parents. Northeastern, which was unaware of the 1974 alleged conveyance of the subject funds to appellants, neither sought the funds in appellants' names nor directed Olenick to pay it from anything other than funds held by Olenick on behalf of appellants' parents. Indeed, Northeastern's *only* action relevant to appellants was the filing of interrogatories to determine whether the funds Pulmac held belonged to its judgment debtor. That action was proper under the circumstances, and certainly does not represent a departure from a reasonable standard of care.

We find further support for our conclusion that Northeastern's conduct was not tortious by noting that a rule that

requires a judgment creditor to be aware that the funds from which his garnishment is satisfied are not those of his judgment creditor before imposing liability for wrongful garnishment is consistent with the "prophylactic" purpose of tort law. As noted above, the law of torts is designed to prevent prospective tortfeasors from acting unreasonably in violation of others' rights. This idea is often expressed in terms of a "duty of care" owed to the person whose rights the tortfeasor is alleged to have violated. *See generally, Prosser and Keeton, supra* § 53 at 356–58. In order for the law to reform or prevent such unreasonable conduct, it follows that the duty the law imposes itself must be reasonable and foreseeable. In this case, however, a rule imposing liability when a judgment creditor is unaware of the identity of the party whose funds are used by a garnishee to satisfy judgment would be unworkable. Appellants in the instant case were aggrieved not when Northeastern sought garnishment, but when their representative, Olenick, misappropriated their property to satisfy the judgment. Northeastern had no control over the actions of Olenick. To hold Northeastern responsible for the actions of appellants' own representative, when Northeastern does not have the ability to reform his conduct, would be to impose a form of strict liability. This we are unprepared to do.

█ In summary, we hold that a garnishment creditor cannot be liable for wrongful garnishment if the creditor followed the proper procedure for obtaining the garnishment, and was unaware that the funds it received in satisfaction of the garnishment belonged to someone other than its judgment debtor. Here, Northeastern did not violate a reasonable standard of care by intentionally disregarding the issue of who owned the funds in question, because Northeastern served Olenick with interrogatories in an effort to determine whose funds he held. Northeastern was unaware that the funds it garnished belonged to anyone other than its judgment debtor, and was not responsible for Olenick's actions in utilizing appellants' funds to satisfy the garnishment. On such a record, we agree with the trial

court that Northeastern cannot be liable to appellants for wrongful garnishment.[7]

For the above-stated reasons, we affirm the order of the trial court.

Order affirmed.

JOHNSON, J., concurs in the result.

---

7. The fact that appellants cannot recover against the garnishor does not, of course, affect their potential claims against other parties. In particular, we note that appellants may have had a cause of action against their trustee. *Cf. Garden City Shopping Center v. Super Gen. Stores*, 29 Pa.D & C 3d 319, 335 (C.P.Allegheny Co.1982) (knowing garnishee releasing funds to garnishor ignorant of potential third party claims to funds may be liable to third party claimant).